**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 CR 643 |
| ) | |
| BRET BESHEY, AUSTIN ) | |
| MANSUR, and ERIC WELLER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS

Bret Beshey, Austin Mansur, and Eric Weller are charged, along with several other defendants, with securities fraud and conspiracy. Three defendants have entered guilty pleas, and the charges against three others have been deferred via pretrial diversion agreements. Beshey, Mansur, and Weller have filed motions seeking dismissal of the charges as well as various discovery particulars. The Court rules on the motions as described below.

**1. Motion to dismiss**

Mansur, joined by Weller, have moved to dismiss the charges against them on the ground that they fail to charge an offense. The indictment alleges as follows. Shane Fleming, a defendant who has since pled guilty, was a vice president at Life Time Fitness, Inc. In that capacity, he learned of acquisition discussions involving private equity firms that would result in an increase in the price of LTF's stock to at least $65 per share. Fleming had a fiduciary duty to LTF to maintain the confidentiality of this material, nonpublic information and not to disclose it to others. Fleming nonetheless

misappropriated this information and disclosed it to Beshey, with whom he had a close personal relationship, knowing that Beshey would use the information to purchase and sell securities or cause others to do so based on the information. Beshey agreed to pay Fleming some of the profits he made as a result.

Beshey, in turn, provided the information to defendants Chasity Clark (Beshey's girlfriend), Peter Kourtis (a close friend and business partner), and Bonvissuto (a friend of Clark, who had introduced him to Beshey). The indictment alleges that each of the others knew that "Shane," Beshey's close friend and a senior employee of LTF, had misappropriated the information in breach of his duties to the company. They agreed that Kourtis would purchase out-of-the-money LTF call options and would pay Beshey some of the profits earned; and that Bonvissuto would do the same and pay some of the profits to Beshey and Clark, who in turn would share them with Fleming.

The indictment alleges that Kourtis, in turn, provided the same inside information to Weller, Mansur, Carlucci, and Kandalepas, with whom Kourtis had a close personal relationship. According to the indictment, each of the others knew that Kourtis had learned material, nonpublic information from a close personal friend, who in turn had learned the information from a close personal friend and senior employee at LTF, who had misappropriated the information from LTF in breach of his duties to the company. The five agreed that they would purchase out-of-the-money LTF call options and that each (except for Kandalepas) would pay Kourtis some of the profits they made.

According to the indictment, Bonvissuto, Kourtis, Weller, Mansur, Carlucci, and Kandalepas each purchased out-of-the-money LTF call options for a total of about $106,000 and later sold them, receiving proceeds totaling about $866,000. The

2

indictment alleges that Kourtis gave part of his proceeds to Beshey and Clark; Bonvissuto turned over part of his proceeds to Clark to pay her, Beshey, and Fleming (Beshey and Clark later gave part of this to Fleming); Carlucci gave part of his proceeds to Kourtis; Weller gave Kourtis 10 pounds of marijuana as payment, which Kourtis sold for about $20,000; and Mansur paid part of his proceeds to Kourtis.

Mansur and Weller first challenge the sufficiency of the securities fraud allegations in the indictment. Section 10(b) of the Securities Exchange Act of 1934 prohibits undisclosed trading on inside corporate information by an individual who is under a duty of trust and confidence that prohibits him from secretly using such information for his personal advantage. 15 U.S.C. § 78j(b). Such a person "also may not tip inside information to others for trading." *United States v. Salman*, 137 S. Ct. 420, 423 (2016). And "[t]he tippee acquires the tipper's duty to disclose or abstain from trading if the tippee knows the information was disclosed in breach of the tipper's duty, and the tippee may commit securities fraud by trading in disregard of that knowledge." *Id.* A tipper "breaches such a fiduciary duty . . . when the tipper discloses the inside information for a personal benefit," and a jury "can infer a personal benefit . . . where the tipper receives something of value in exchange for the tip or 'makes a gift of confidential information to a trading relative or friend.'" *Id.* (quoting *Dirks v. SEC*, 463 U.S. 646, 664 (1983)). To put it another way, the "personal benefit element can be met by evidence that the tipper's disclosure of inside information was intended to benefit the tippee"; "the evidentiary bar [regarding this element] is not a high one." *United States v. Martoma*, 894 F.3d 64, 76 (2d Cir. 2018) (internal quotation marks omitted).

Weller and Mansur contend that the indictment fails to allege that they knew

3

Fleming, the insider, received a benefit and that allegations about friendship are insufficient to establish personal benefit. The Court disagrees. The indictment alleges that the tippees (Mansur and Weller) knew the corporate insider (Fleming) had disclosed the inside information in breach of a fiduciary duty. Indictment ¶ 3(j). And more specifically, the indictment alleges that Mansur and Weller knew that Kourtis's source, a close personal friend, had learned the information from a high-level LTF insider who was a close personal friend. *See id.* ¶ 3(f). Under the law, as just discussed, personal benefit to an insider may be inferred when the insider tips a close friend. *See Salman*, 137 S. Ct. at 423 (quoting *Dirks*); *Martoma*, 894 F.3d at 76. For these reasons, the indictment's allegations are sufficient to charge an offense.

Mansur and Weller also contend that the indictment is "internally inconsistent and contradictory" because it alleges that Fleming agreed to provide information to Beshey in return for money but alleges that Mansur and Weller were aware that the tipper (Fleming) and Kourtis's source (Beshey) were close friends, not that a monetary *quid pro quo* was involved. But nothing in section 10(b) or the cases interpreting it require a tipper to gain one, and only one, benefit from disclosing information. And defendants likewise cite no case that says that when a tipper is receiving more than one personal benefit from disclosing information, a tippee (or second-level tippee like these defendants) must be aware of each such benefit. The Court finds no such requirement in the statute, Rule 10b-5, or the caselaw interpreting them. For these reasons, the Court denies Mansur and Weller's motion to dismiss the securities fraud charges.

The Court likewise denies their motion to dismiss the conspiracy charge. Mansur and Weller contend that the indictment charges two separate conspiracies, one

4

involving tippees who agreed to pay the insider for information and another involving tippees who are not alleged to have had knowledge that the insider was being paid or expected payment. This argument is a non-starter. The law of conspiracy does not require each conspirator to know all the other conspirators or all the details of the conspiracy. *See, e.g., United States v. Blumenthal*, 332 U.S. 539, 557 (1947); *United States v. James*, 540 F.3d 702, 708 (7th Cir. 2008); *United States v. Bolivar*, 532 F.3d 599, 603 (7th Cir. 2008). And so long as the conspiracy has a common purpose—in this case, the knowing use of material, nonpublic information to trade securities for personal gain in violation of the fiduciary duty of the insider who disclosed the information—the fact that the insider may have benefitted in more than one way does not establish, as defendants contend, that there were multiple conspiracies rather than one.

**2.    Discovery motions**

   **a.    Other act evidence (Weller motion)**

The Court grants Weller's motion for disclosure of other act evidence and directs the government to disclose all other act evidence that it intends to offer in its case in chief, to impeach any witness (including the defendant), or in rebuttal. *See* Fed. R. Evid. 404(b), 1991 Advisory Committee Notes; *United States v. Vega,* 188 F.3d 1150 (9th Cir. 1999). The government must provide a written disclosure of the nature of the evidence, including a general description of the act or acts and the dates, places, and persons involved, and a statement of the issue or issues on which the government believes the evidence is relevant and admissible. It must also produce any documents which contain or constitute evidence of any such other acts. The disclosures must be

made no less than 30 days prior to trial, though the Court encourages the government to consider earlier production to facilitate pretrial resolution of admissibility issues and avoid the possible need for a continuance.

As a general rule, a defendant is not entitled to pretrial production of material to be used for impeachment purposes pursuant to Fed. R. Evid. 608(b). However, to the extent that evidence that may be used to impeach under Rule 608(b) also constitutes "other act" evidence within the meaning of Rule 404(b) and the 1991 Advisory Committee Notes to that Rule, or evidence subject to disclosure under Rule 16, the fact that it might also be admissible under Rule 608(b) does not excuse the government from pretrial disclosure pursuant to the previous paragraph of this order. *See generally United States v. Lim,* No. 99 CR 689, 2000 WL 782964, at *1-2 (N.D. Ill. June 15, 2000).

    b.    **Agents' notes (Weller and Mansur motions)**

The Court grants Weller's motion seeking an order for preservation of notes prepared by government agents relating to the investigation.

Mansur's motion contains a request for immediate production of agents' notes. This motion is denied without prejudice as premature. Mansur's motion suggests that notes may contain statements by potential witnesses. If so, the Court lacks the authority to require their production prior to the testimony of the witness(es), except to the extent the notes contain exculpatory or impeaching material, a topic the Court will address separately. *See* 18 U.S.C. § 3500(a).

    c.    *Brady / Giglio* **motions (Weller and Mansur)**

The Court grants these motions; the requests they contain fall within the government's production obligations under *Brady* and tis progeny, including *Giglio*. To the extent these motions request information exculpating a defendant, the government

6

must produce the material immediately, unless it has already done so. To the extent these motions request information impeaching a government witness—including material that contradicts a witness's expected testimony—the government must produce the material no less than 30 days prior to trial.

### d. Drafts of grand jury statements (Mansur motion)

The government objects to Mansur's motion seeking production of drafts of grand jury statements. If the government has non-identical or marked-up drafts of statements read to the grand jury by witnesses during the investigation that resulted in the indictment, it must preserve them. The Court also directs the government to produce any such material to the Court for *in camera* inspection, along with a copy of the final statement read to the grand jury, for comparison purposes. This will allow the Court to assess whether any such drafts may contain impeaching material that the government is obligated to produce. If the government contends that any such draft is non-producible as attorney work product or otherwise—which is unlikely at least to the extent the draft was shared with a witness or a witness's attorney—the government may make that case in a written submission to the Court.

### Conclusion

For the reasons described above, the Court denies Mansur and Weller's motion to dismiss [161] and partially grants those defendants' other pretrial motions [163] [164] [166] [167] as described in the body of this memorandum opinion and order.

Date: January 22, 2019

_____
MATTHEW F. KENNELLY
United States District Judge